606 So.2d 716 (1992)
Eva Marie KOWKABANY, Appellant,
v.
The HOME DEPOT, INC., a foreign corporation registered to do business in Florida as The Home Depot, Inc., Appellee.
No. 90-3806.
District Court of Appeal of Florida, First District.
October 16, 1992.
Bert A. Rasmussen of Bullock, Childs & Pendley, P.A., Jacksonville, for appellant.
Michael I. Coulson and Gordon P. Jones of Saalfield, Catlin, Coulson & Etheridge, Jacksonville, for appellee.
MINER, Judge.
At the close of all the evidence at the trial of this personal injury action, the trial court granted defendant/appellee's (Home Depot's) motion for a directed verdict on the issue of liability and subsequently entered an amended final judgment in its favor. Finding that Home Depot owed a duty to appellant as a matter of law, and that a jury question was presented on the issue of proximate cause, we reverse and remand for a new trial.
On the morning of May 10, 1987, Eva Kowkabany and a friend were riding their bicycles along the edge of Phillips Highway *717 in Jacksonville when Kowkabany was struck by a wooden landscaping timber, one of several protruding from the front passenger-side window of an automobile driven by Donald Remseyer. She was knocked from her bicycle and suffered serious injuries. Thereafter, she filed suit for her injuries against Donald Remseyer and his wife and Home Depot, the business establishment at which Remseyer purchased the timbers and whose unidentified employee assisted Remseyer in loading them in his automobile. At the commencement of trial of the cause in late October of 1989, Kowkabany voluntarily dismissed the suit against the Remseyers[1] and proceeded only against Home Depot.
As to Home Depot, Kowkabany's complaint stated:
11. Defendant, The Home Depot, Inc., owed a duty to the plaintiff to ensure that the lumber was loaded into the passenger vehicle consistent with safe practices as defendant, The Home Depot, Inc., knew or should have known the vehicle would be operated upon the public highways.
12. The defendant, The Home Depot, Inc., breached that duty by loading lumber into the passenger vehicle in such a manner that it projected 6 inches or more beyond the line of the fenders on the right side thereof.
Home Depot's liability was initially expressly predicated, in part, upon a violation of section 316.510, Florida Statutes,[2] which prohibits operating a vehicle with a load extending more than 6 inches beyond the line of the fenders on the right side. However, the count of Kowkabany's complaint grounded upon the statute was dismissed when Home Depot argued that the statute only applied to operation of a vehicle and imposed no duty upon Home Depot.
At trial, one George Hood testified that he was driving his car in the right-hand lane of Phillips Highway on the morning in question and had passed two female bicyclists without experiencing any difficulty negotiating his way around them. Looking through his rearview mirror, he saw the plaintiff as she was struck by the timber protruding from Remseyer's car.
Remseyer testified that he had purchased four eight-foot landscape timbers at Home Depot's store in Jacksonville on May 10, 1987, after which a store employee he could not identify assisted him in taking the timbers out to his automobile in the parking lot. When Remseyer and the employee got to the car, Remseyer rolled down the passenger-side window and indicated that he would put the timbers into the back of the car and extend them through the window. Remseyer, himself, put the first timber in place, and the employee loaded the other three timbers in like fashion. Remseyer then rolled up the window to secure the timbers, which extended out the window approximately two and one half to three feet. The Home Depot employee, according to Remseyer, did not warn him that the load was unsafe, nor was Remseyer aware of a statute prohibiting a load protruding more than 6 inches beyond the line of fenders on the right-hand side of the vehicle.
Remseyer added that after he left Home Depot's parking area with the timbers so loaded, he drove for approximately 20 to 25 minutes before coming upon Kowkabany on her bicycle. He described his encounter with Kowkabany as follows:
[DEFENDANT'S COUNSEL] And as you approached them, you were aware that they were riding their bicycles on the side of the road?
[REMSEYER] Yes, sir.

*718 [COUNSEL] Okay. And as you came upon them, you looked to your left because you thought about moving to the left-hand lane, correct?
[REMSEYER] Right.
[COUNSEL] Okay. But you couldn't, right?
[REMSEYER] Because there was a car there.
[COUNSEL] Okay. You had a car next to you?
[REMSEYER] Yes, sir.
[COUNSEL] Okay. Now you're continuing still to approach these bicyclists, but it is true, isn't it, that you think there is room to make it by them?
[REMSEYER] Yes.
[COUNSEL] Okay. So you were in a position at that point where you had to make a judgment call, correct?
[REMSEYER] Yes, sir.
[COUNSEL] Okay. And your judgment and your decision at that time was to try to just go ahead and go by them, thinking you had room to clear them?
[REMSEYER] Yes, sir.
[COUNSEL] Okay. All right. And when you did that, unfortunately, you struck Ms. Kowkabany?
[REMSEYER] Yes.
... .
[COUNSEL] In fact, you were aware of the wood?
[REMSEYER] Yes.
[COUNSEL] Okay. Why didn't you change lanes when you first saw the bicyclists up ahead of you when you were back from them?
[REMSEYER] I don't know. There  it was far enough back to start with. I didn't think the person  I mean, I thought sure the other man saw the bicycles also and that he would at least lay back until we passed them before he tried to pass me.
[COUNSEL] Okay. So he kind of put you in a squeeze situation a little bit?
[REMSEYER] Yes.
[COUNSEL] Okay. Now, you didn't ever hit your brakes though before you got to Ms. Kowkabany, did you, sir?
[REMSEYER] No.
[COUNSEL] Okay. And you could have done that and you could have slowed down ... until he went by you, correct?
[REMSEYER] Yes.
[COUNSEL] Okay. But you just didn't do that, you made that decision not to do that?
[REMSEYER] I still thought I cleared them.
[COUNSEL] Yes, sir. Okay. May I assume that you felt that as you got right up on Ms. Kowkabany on her bicycle that you still did not believe that you posed a danger to her?
[REMSEYER] I still believed it till I heard the noise.
Kevin J. Hardy, a lot man, testified that he was working at Home Depot on May 10, 1987, and, while he did not recall loading timbers into Donald Remseyer's car or Remseyer, himself, Hardy described his loading responsibilities in the following terms:
[PLAINTIFF'S COUNSEL] Okay. What type of instructions were given to you, if any concerning the loading of wood into passengers' vehicles where the wood projected out of the right passenger's-side window?
[HARDY] Other than just my own common sense, it was just spoken to me that past a certain point  which I don't remember exactly what it was  it was against the law in order for it to be projecting out that far.
[COUNSEL] And were you instructed, sir, about loading the wood contrary to this distance that you vaguely remember?
[HARDY] Yes, sir.
[COUNSEL] What did they tell you, sir?
[HARDY] It's been a long time ago, but they said  and I don't even remember who said it. Just that past  I think outside the bumper maybe of the vehicle, that it was not supposed to protrude that far past, you know.
... .

*719 [COUNSEL] Were you instructed you were not to do that... on a passenger vehicle?
[HARDY] Yes, sir.
On cross-examination, Hardy testified that he usually suggested tying loads of lumber to the roof of the car because it was the safest method. If customers were worried about scratches, he would place cardboard under the load to protect the car. He testified that he couldn't recall any situation where he couldn't talk a customer into placing the load on the roof. Finally, defense counsel elicited the following testimony from Hardy:
[DEFENDANT'S COUNSEL] Okay. If a customer was adamant and he told you what he wanted done, what were you supposed to do? ... If he was firm on what he wanted done, what were you supposed to do; what were you instructed to do?
[HARDY] Still use my own judgment.
[COUNSEL] Okay. Were you then supposed to not go along with the customer?
[HARDY] Yes, sir. Refuse if it is dangerous or ... a safety risk.
[COUNSEL] And then you were to allow the customer to do as he chose without your assistance?
[HARDY] Usually turn it over to the manager or somebody that, you know, can maybe talk them out of doing that, maybe state something else.
The deposition of William Holton was read into evidence. Holton identified himself as the administrative assistant of the Home Depot store on Atlantic Boulevard. According to Mr. Holton it was among the duties of the store's lot men to assist customers who needed help in loading their purchases. No specific training or orientation was given concerning loading, but lot men were required to "use common sense" when loading. Although they were required to make sure that items were loaded safely and did not interfere with driving, if the customer was insistent, the lot men would load according to the customer's instructions. Holton agreed that the following answer to an interrogatory was an accurate description of Home Depot's policy:
The Home Depot policy is that the customer should be assisted pursuant to the customer's wishes. Therefore, the policy is to load the merchandise in the customer's vehicle in accordance with the customer's direction.
Home Depot had a sign posted which read: "ATTENTION CUSTOMERS: WE ARE HAPPY AND PLEASED TO PROVIDE ASSISTANCE IN HELPING LOAD YOUR PURCHASES; HOWEVER, WE CANNOT ASSUME LIABILITY FOR ANY DAMAGE WHICH MAY OCCUR."
After the testimony of these and other witnesses, the plaintiff rested her case. The defendant rested after placing only a photograph of the above posted sign in evidence. Home Depot moved for a directed verdict and, after hearing extensive argument on the motion, the trial court, without making written findings, directed a verdict in favor of Home Depot. Subsequently, a final judgment was entered and this appeal followed.
On appeal, as below, Ms. Kowkabany maintains that the trial court erred in granting Home Depot's motion for directed verdict. She urges that a jury question was presented as to whether Home Depot assumed a duty to her and, further, that a jury issue was joined as to whether an independent and efficient intervening event, i.e. Remseyer's negligent operation of his timber-laden automobile, broke the chain of causation between Home Depot's negligent loading of the timbers and her injuries.
Before addressing the specific issues raised in this appeal, we first observe that in reviewing the propriety of a directed verdict, an appellate court must weigh the facts and inferences to be drawn therefrom in the light most favorable to the person against whom judgment has been granted. A directed verdict can be upheld only if there is no evidence or inference from the evidence which will support the non-moving party's position. Kirby v. OMI Corp., 561 So.2d 666, 669 (Fla. 1st DCA), review denied, 574 So.2d 141 (Fla. 1990), *720 cert. denied, ___ U.S. ___, 111 S.Ct. 1108, 113 L.Ed.2d 217 (1991); Gant v. Lucy Ho's Bamboo Garden, Inc., 460 So.2d 499 (Fla. 1st DCA 1984). Moreover, a directed verdict in a negligence action should only be entered if the plaintiff could not recover under any reasonable view of the evidence. Pritchett v. Jacksonville Auction, Inc., 449 So.2d 364 (Fla. 1st DCA 1984).
In the setting in which this case arose, to establish negligence, it must be made to appear that the obligation of taking active measures to discover the peril and prevent an injury therefrom was one due from the defendant to the person injured. As a general proposition, it is not sufficient to show that the defendant owed to another person or class of persons a duty which, had it been performed, would have prevented the injury of which complaint is made by the plaintiff. 38 Fla.Jur. 2d, Negligence, § 15.
Turning now to the "duty" issue argued by Kowkabany below and on appeal, it appears that she relies on section 316.510, Florida Statutes, to impose a statutory duty upon Home Depot and thereby bring herself within the ambit of the above referenced general rule. She contends that the statute operated to make her a foreseeable plaintiff (i.e., a motorist or some other user of the highway) subject to a foreseeable type of harm (i.e., being struck by a protruding load or injured in an accident caused by a protruding load). However, the problem with such an argument is that it focuses entirely upon the beneficiary of the duty (the plaintiff) without recognizing the limited class of persons who are subject to the duty (operators of motor vehicles). Clearly, section 316.510 operates to protect motorists and other users of the highway including, we believe, bicyclists such as Kowkabany. However, the party upon whom the duty is imposed is specifically limited to "operators" of passenger vehicles. Chapter 316 defines "operator" as "[a]ny person who is in actual physical control of a motor vehicle upon the highway, or who is exercising control over or steering a vehicle being towed by a motor vehicle." § 316.003(25), Fla. Stat. (1987). To be sure, the statute here in question imposed a duty upon Mr. Remseyer, but we do not interpret it to apply to Home Depot. This does not end the inquiry, however.
In a recent opinion in McCain v. Florida Power Corporation, 593 So.2d 500 (Fla. 1992), the Florida Supreme Court addressed what it perceived to be a confusion of the foreseeability element of duty with the foreseeability inherent in proximate causation. In McCain, the plaintiff was injured when the blade of a mechanical trencher he was operating struck an energized underground power cable. There was evidence that an employee of the defendant, Florida Power Corporation, had previously marked the area wherein the injury occurred as "safe" for excavation. Concluding that the injury sustained by the plaintiff was not foreseeable, the Second District Court of Appeal reversed a jury award for plaintiff and remanded the case to the trial court with instructions to enter a directed verdict in favor of the power company. In reversing, the supreme court found that the district court had fallen victim to the confusion referred to above. Although McCain and the case at hand are factually dissimilar, we find the supreme court's analysis of duty to be not only instructive but controlling on the duty issue raised in the instant case. The court stated:
The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others... . The proximate causation element on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former is a minimal threshold legal requirement for opening the courthouse doors, whereas the latter is part of the much more specific factual requirement that must be proved to win the case once the courthouse doors are open.
... .
... As to duty, the proper inquiry for the reviewing appellate court is whether *721 the defendant's conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred.
Id. at 502-504 (emphasis in original) (citations omitted).
Applying this standard to the facts of the case at hand we are of the view that Home Depot undertook the duty to safely load the timbers into Remseyer's vehicle. The allegedly negligent loading of the timbers by Remseyer and the unknown Home Depot employee was but the tag end of a commercial transaction presumably profitable to Home Depot which included the purchase by Remseyer and the loading assistance provided to Remseyer part and parcel to his purchase. In failing to safely secure the loaded timbers in accordance with the "common sense" which was Home Depot's polestar direction to its lot men, we find that Home Depot created a McCain-type "zone of risk" wherein a highway mishap of some description might well take place. This was sufficient to establish the "duty" element of negligence vis-a-vis Ms. Kowkabany. See Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257 (Fla. 4th DCA 1985); Restatement (Second) of Torts, § 324A (1964). Consequently, it was not necessary for her to show that Home Depot should have foreseen her presence on the road or the manner in which her injuries occurred. Additionally, because she was within the McCain "zone," it was not necessary for her to resort to chapter 316 to establish Home Depot's duty.[3]
Concerning the proximate cause issue, Home Depot argues that it was Remseyer's loading instructions and his negligent operation of the automobile that constituted the cause-in-fact of Kowkabany's injuries. As a second line of defense, appellee contends that even if its actions are the cause-in-fact of appellant's injuries, its negligence could not be the proximate cause of the injuries due to Remseyer's intervening negligence, which negligence relieved Home Depot of liability unless the intervening negligence was reasonably foreseeable.
Citing to Department of Transportation v. Anglin, 502 So.2d 896 (Fla. 1987), Home Depot correctly observes that the Anglin test of foreseeability inquires whether the original actor (Home Depot) set in motion the subsequent negligence or merely provided the occasion for the subsequent negligence; only if Home Depot set the subsequent negligence in motion will it be held liable.
More than just introducing the "sets in motion"/"provides the occasion" dichotomy in analyzing proximate cause, Anglin established the proposition that an independent, intervening cause should only be found where the circumstances are "highly unusual, extraordinary, bizarre or, stated differently, seem beyond the scope of any fair assessment of a danger created by the defendant's negligence." Anglin at 899. Applying the "highly unusual, extraordinary, bizarre" circumstances standard to the facts of this case, a jury could very reasonably find that Remseyer's poor judgment in driving his automobile, which resulted in the timber striking Ms. Kowkabany, was not so unusual or bizarre that it could not have reasonably been foreseen.
In sum, we conclude that Home Depot, having created a "zone of risk" wherein one such as appellant might fall victim to the risk so created, owed a duty to appellant, as a matter of law, and, further, that a jury issue existed with respect to whether Home Depot's negligence was the proximate cause of appellant's injuries.
Accordingly the cause is reversed and remanded for a new trial.
ALLEN, J., concurs and BOOTH, J., dissents.
NOTES
[1] Apparently, the dismissal as to the Remseyers was motivated by the discovery of a release agreement purporting to absolve them of responsibility. Because the Remseyers did not have counsel at trial, and there was some dispute as to the proper interpretation of the release agreement, Kowkabany decided to voluntarily dismiss the Remseyers without prejudice.
[2] Section 316.510, Florida Statutes (1987), provides: "No passenger type vehicle shall be operated on any highway with any load carried thereon extending beyond the fenders of the left side of the vehicle or extending more than 6 inches beyond the line of the fenders on the right side thereof." (Emphasis added).
[3] We note that the able trial court did not have the benefit of the McCain rationale when it granted Home Depot's motion for directed verdict.