HAZOURI, J.
 

 National Institute for Truth Verification (NITV) appeals a $575,000 judgment entered in favor of Elwood Gary Baker, based upon Baker’s claim of defamation. The jury verdict rendered in the case was an itemized verdict which consisted of the following: (a) loss of ability to earn money in the past $225,000; (b) loss of ability to earn money in the future $116,000, reduced to its present value of $100,000; (c) injury to his reputation $250,000. Total of (a), present value of (b), and (c) equals $575,000. We affirm the award of $250,000 for damage to reputation, but reverse the award for loss of the ability to earn money in the past and in the future.
 

 Baker distributes and provides training for the Digital Voice-Stress Analyzer (DVSA), a “truth verifier” that conducts voice stress analysis. The DVSA is a soft
 
 *1251
 
 ware program that can be installed on computers owned by law enforcement agencies. NITV also distributes and provides training for a similar instrument, the Computer Voice Stress Analyzer (CVSA), in competition with Baker.
 

 The two parties have a contentious history. NITV originally sued Baker in federal court for false advertising and unfair competition. NITV and Baker resolved the suit at mediation in December of 2004. Approximately one month later, NITV prepared two documents entitled “Law Enforcement Alert” and “Law Enforcement Scam Alert,” that it published to Baker’s actual and potential customers. Charles Humble, the managing member of NITV, and David Hughes, the Executive Director of NITV, authored the alerts.
 

 The law enforcement alerts were published to 300 law enforcement agencies in Illinois and as many as 8500 other departments throughout the country. In response to these alerts, Baker filed a complaint for defamation. NITV answered the complaint and raised the following affirmative defenses: truth, conditional privilege, qualified privilege, and that the publications were made in good faith and without malice.
 

 The parties proceeded to a jury trial and at the close of Baker’s case, NITV moved for a directed verdict, arguing the following three grounds: (1) Baker failed to prove any damages; (2) the information within the alerts was true; and (3) NITV had a conditional privilege to make the statements. The trial court denied the motion.
 

 Prior to the jury retiring to consider its verdict, it was properly instructed on the definition of what constituted defamation and whether NITV made statements concerning Baker which tended to expose Baker to hatred, ridicule, or contempt, or tended to injure Baker in his business, reputation, or occupation. The jury was further instructed as to what constitutes the defense of truth, opinion, conditional privilege, abuse of privilege and finally, causation and damages.
 

 At the conclusion of the jury’s deliberation, it returned the following verdict:
 

 WE, THE JURY, return the following verdict:
 

 1. Did NITV, LLC make a defamatory publication regarding ELWOOD GARY BAKER?
 

 Yes X No_
 

 If your answer is Yes, go to Question 2. If your answer is No, you do not need to answer any further questions. Verdict should be entered in favor of NITV, LLC and the Foreperson should date and sign at the end of this document.
 

 2. Did the publication made by NITV, LLC tend to impute to ELWOOD GARY BAKER conduct incompatible with the proper exercise of his trade or business or tend to injure ELWOOD GARY BAKER in his business, reputation or occupation?
 

 Yes X No_
 

 If you answered Yes to either or both Questions 1 and 2, go to Question 3.
 

 3. Was the publication made by NITV substantially true and made with good motives?
 

 Yes_ No X
 

 If your answer is Yes, you do not need to answer any further questions. Verdict should be entered in favor of NITV, LLC and the Foreperson should date and sign at the end of this document. If your answer is No, go on to Question 4.
 

 4. Did NITV have a conditional privilege to make the publication?
 

 Yes_ No X
 

 
 *1252
 
 If your answer is Yes, you should answer question 5. If your answer is No, you should skip question 5 and go to question 6.
 

 5. Did NITV abuse its conditional privilege by making the publication with improper motives and purpose to gratify its ill will, hostility and intent to harm ELWOOD GARY BAKER, rather than to advance or protect NITV’S interest, right or duty to speak on that subject?
 

 Yes_ No_
 

 If your answer is Yes, go to question 6. If your answer is No, your verdict is for NITV, LLC, and the Foreperson should date and sign at the end of this document.
 

 6. What is the total amount of damages suffered by ELWOOD GARY BAKER due to NITV LLC’s defamatory publication?
 

 A. Loss of ability to earn money in the past:
 

 $225,000.00
 

 B. Loss of ability to earn money in the future:
 

 $116,000.00
 

 Amount immediately above reduced to present value:
 

 $100,000.00
 

 C. Injury to reputation:
 

 $250,000.00
 

 Total of A, present value of B, and C above:
 

 $575,000.00
 

 If you entered a verdict for ELWOOD GARY BAKER but found that no losses, injuries, or damages were proved, you may award Nominal Damages to vindicate a right where a wrong is established.
 

 D.The amount of Nominal Damages is: |0
 

 “The standard of review on appeal of the trial court’s ruling on a motion for directed verdict is de novo.”
 
 Contreras v. U.S. Sec. Ins. Co.,
 
 927 So.2d 16, 20 (Fla. 4th DCA 2006) (citing
 
 Flagstar Cos. v. Cole-Ehlinger,
 
 909 So.2d 320 (Fla. 4th DCA 2005)). “Upon a directed verdict motion, the weight of the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party.”
 
 Pascale v. Fed. Exp. Corp.,
 
 656 So.2d 1351, 1353 (Fla. 4th DCA 1995) (citing
 
 Kowkabany v. Home Depot, Inc.,
 
 606 So.2d 716 (Fla. 1st DCA 1992)). “[A] trial court should direct a verdict against the plaintiff only if there is
 
 no
 
 evidence, or reasonable inferences therefrom, upon which a jury may find for the nonmoving party.”
 
 Id.
 
 (citations omitted). A “motion for directed verdict must be denied if the evidence presented is conflicting or different conclusions can be drawn from it.”
 
 CDS Holdings I, Inc. v. Corp. Co. of Miami,
 
 944 So.2d 440, 443 (Fla. 3d DCA 2006) (citations omitted).
 

 “To establish a cause of action for defamation, a plaintiff must show that (1) the defendant published a false statement about the plaintiff, (2) to a third party, and (3) the falsity of the statement caused injury to the plaintiff.”
 
 Razner v. Wellington Reg’l Med. Ctr., Inc.,
 
 837 So.2d 437, 442 (Fla. 4th DCA 2002) (citing
 
 Valencia v. Citibank Int’l.,
 
 728 So.2d 330, 330 (Fla. 3d DCA 1999)).
 

 “A jury verdict must be sustained if it is supported by competent substantial evidence.”
 
 State, Dep’t of Children & Family Servs. v. Amora,
 
 944 So.2d 431, 435 (Fla. 4th DCA 2006) (citing
 
 Richey v. Modular Designs, Inc.,
 
 879 So.2d
 
 *1253
 
 665, 667 (Fla. 1st DCA 2004)). “Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred.”
 
 De Groot v. Sheffield,
 
 95 So.2d 912, 916 (Fla.1957). Baker’s damages award as it relates to loss of money earned in the past and in the future was not supported by competent substantial evidence. ,
 

 Baker’s business model consists of him providing DVSA software to law enforcement agencies for free or at a nominal cost. He then charges a fee per officer to attend the seminars. Baker testified that he had scheduled training seminars with four law enforcement agencies. However, following January 2005, after the publication and circulation of the alerts, all four departments cancelled their seminars.
 

 Baker testified that he expected approximately twenty to twenty-five officers to attend each training course. However, Baker provided no documentation of this figure and did not have specific officers enrolled. While the hosting agency was typically not charged, Baker charged each participant $1250. Based on previous attendance, Baker expected fifteen non-hosting students at each class at a cost of $1250 each, plus an additional $300 every four years for recertification. Baker testified that based on his experience, “almost all” departments recertify “[e]very year.” Again, however, there was no evidence of the exact number of officers that would choose to recertify outside of Baker’s testimony.
 

 Additionally, Baker provided very general figures regarding his overhead costs. When asked about seminar expenses, Baker testified that he had “[v]ery little overhead. It’s my time that’s involved of [sic] working, setting them up and so forth, but minimal travel, hotel, many times I drive. Less than $1,000 per seminar would be my cost.” This testimony was the extent of Baker’s description of his overhead; he provided no itemized list or documentation of his specific overhead costs.
 

 Baker’s damages also included the work he expected from the Florida Department of Corrections (DOC) to perform sex offender polygraph examinations. In 2005, Baker testified that the DOC questioned his qualifications and he had to prove that he was a qualified polygraph examiner. Since this time, the DOC has not engaged Baker’s services. Prior to 2005, however, Baker testified that he typically performed between 200-250 polygraph tests with the DOC per year. Baker charged between $150-$185 per test and had very little overhead. In closing argument, Baker’s counsel stated that Baker performed 130 tests per year at a cost of $150 per test. Accordingly, Baker’s counsel proposed that damages from 2005-2009 for the canceled polygraph tests amounted to $97,500. Notably, there was no explanation for the discrepancy between Baker’s testimony that he performed 200-250 tests per year, and his counsel’s decision to propose he performed 130 tests per year.
 

 Further, Baker’s tax returns demonstrated that his income increased from 2003 to 2006. According to Baker’s 2003 tax return, he earned $25,016. In 2004, Baker earned $42,800 before expenses. In 2005, Baker’s income declined slightly and he earned $38,538. Remarkably, however, in 2006, the year following publication of the alerts, Baker’s income increased substantially to $58,499. Baker did not file tax returns in 2007 or 2008.
 

 Baker’s testimony concerning his economic damages was vague and ill defined. Baker’s tax returns demonstrated that his earnings increased following January of 2005. Further, Baker did not know exactly how many officers would have taken the courses and recertified, nor did he give
 
 *1254
 
 specific figures for his expected profits. Thus, Baker’s request that the jury calculate damages by simply multiplying the number of students who did not attend the seminars by their cost of attendance was an inaccurate measure. Accordingly, there was not substantial competent evidence to support his claim for damages for lost earnings in the past or in the future.
 

 Although we reverse the award for economic damages, we affirm the award of $250,000 for damage to Baker’s reputation. Communication that imputes to another conduct, characteristic, or condition incompatible with the proper exercise of his lawful business, trade, profession or office is slander per se.
 
 See Campbell v. Jacksonville Kennel Club,
 
 66 So.2d 495, 497 (Fla.1953);
 
 Wolf son v. Kirk,
 
 273 So.2d 774, 777 (Fla. 4th DCA 1973). In slander per se actions, general damages are presumed.
 
 See Hood v. Connors,
 
 419 So.2d 742, 743 (Fla. 5th DCA 1982).
 

 General damages are those which the law presumes must naturally, proximately and necessarily result from publication of the libel or slander. They are allowable whenever the immediate result is to impair the plaintiffs reputation, although no actual pecuniary loss is demonstrated. 20 Fla. Jur. Libel and Slander sections 6, 88. Words which are actionable in themselves, or per se, necessarily import general damages and need not be pleaded or proved but are conclusively presumed to result.
 

 Bobenhausen v. Cassat Ave. Mobile Homes, Inc.,
 
 344 So.2d 279, 281 (Fla. 1st DCA 1977).
 

 It is clear from the two publications, the “Law Enforcement Alert” and “Law Enforcement Scam Alert,” that NITV intended to cause damage to Baker’s reputation. There were conflicts in the testimony and it was within the province of the jury to decide whether the statements made in these two publications were false and defamatory. The jury resolved those conflicts in favor of Baker. In the publications, NITV accused Baker
 
 inter alia
 
 of being unfit to be in the truth verification business and of providing false information concerning law enforcement agencies that utilized his system. The very title of one of the circulars, “Law Enforcement Scam Alert,” refers to Baker’s business as a scam. There is little doubt that a jury could conclude that NITV intended to impugn Baker’s integrity and damage his reputation.
 

 The jury was properly instructed as to causation and damages. In particular, as to damage to reputation, the jury was instructed as follows: “[a]ny injury to reputation experienced in the past or to be experienced in the future. There is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any award should be fair and just in light of the evidence.” Accordingly, on the issue of damage to reputation, the jury having been properly instructed and having resolved the conflicts in the testimony, we affirm the award of $250,000 for damage to Baker’s reputation.
 

 We reverse and remand for the trial court to vacate the judgment for economic damages in the amount of $325,000 and affirm the award of $250,000 for injury to Baker’s reputation.
 

 Affirmed in Part; Reversed in Part and Remanded.
 

 GROSS, C.J., and CIKLIN, J., concur.