LEVINE, J.,
dissenting.
I respectfully dissent from the granting of the motion for rehearing and the resulting opinion of the majority. The majority appears to base its granting of rehearing on two reasons. First, the majority states that Webb compels that we revisit our original opinion and second, the appellee, in retrospect, did object “contemporaneously” to the third interrogatory during the jury charge conference. I believe that Webb, from our sister court, is clearly distinguishable, and does not require that we revisit our opinion; and further, that ap-pellee did not contemporaneously object and cannot be heard to complain about the findings by the jury on the interrogatory, and specifically the answer to question 3.
A trial court should grant a directed verdict “only if there is no evidence, or reasonable inferences therefrom, upon which a jury may find for the nonmoving party.” NITV, L.L.C. v. Baker, 61 So.3d 1249, 1252 (Fla. 4th DCA 2011) (citation omitted). “A ‘motion for directed verdict must be denied if the evidence presented is conflicting or different conclusions can be drawn from it.’” Id. (citation omitted). “If there is any evidence to support a possible verdict for the non-moving party, a directed verdict is improper.” McNichol v. S. Fla. Trotting Ctr., Inc., 44 So.3d 253, 255 (Fla. 4th DCA 2010) (emphasis added). The same standard applies with respect to *161 a motion for judgment notwithstanding the verdict. Atkinson v. Anderson, 77 So.3d 768, 769 (Fla. 4th DCA 2011).
The statute of limitations begins to run when a cause of action accrues. § 95.031, Fla. Stat. In cases of products liability, the limitations period begins to run “from the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence.” § 95.031(2)(b), Fla. Stat. The statute of limitations on a smoker’s claims begins to run “when the accumulated effects of the deleterious substance manifest themselves to the claimant in a way which supplies some evidence of a causal relationship to the manufactured product.” Carter v. Brown & Williamson Tobacco Corp., 778 So.2d 932, 934 (Fla.2000). In Carter, the Florida Supreme Court acknowledged that lung cancer is a “creeping disease,” where there is often “no magic moment” when the cause of action is known or should be known. Id. at 936-37 (citation omitted). Thus, often there are “inherently debatable questions about which reasonable people may differ.” Id. at 937 (citation omitted). The Florida Supreme Court concluded that “the question of when the statute of limitations begins to run in this type of case is ‘generally treated as [a] fact question[ ] for a jury to resolve.’ ” Id. (citation omitted).
Although the trial court directed a verdict in favor of Barbanell as to lung cancer, the trial court effectively negated its ruling by submitting the statute of limitations issue to the jury. See Black’s Law Dictionary (9th ed. 2009) (defining a directed verdict as “[a] ruling by a trial judge taking a case from the jury because the evidence will permit only one reasonable verdict”). The trial court correctly submitted the statute of limitations claim to the jury pursuant to Carter and correctly denied Barbanell’s post-trial motion to set aside the jury’s answer to question 3. However, I would find that the trial court erred when it denied Philip Morris’s (“PM”) post-trial motion for judgment as a matter of law because the jury made a finding that the statute of limitations had run. The evidence demonstrated that the decedent began experiencing shortness of breath as early as 1965. In 1968, she tired easily doing simple tasks. These problems continued to grow worse as time progressed. The decedent talked about quitting smoking cigarettes in 1982 due to difficulty breathing and climbing stairs. She continued having trouble climbing stairs, prompting her to go to the doctor in 1985 or 1986. From the time the decedent’s daughter was in high school, the decedent was “very aware that her smoking was causing serious problems to her health.” Additionally, a doctor showed the decedent an X-ray of her lungs and told her that she had to stop smoking.
From this evidence, the jury had the right to conclude, in question 3, that “Shirley Barbanell knew, or should have known in the exercise of reasonable care, prior to May 5, 1990, that she had been injured, and that there was a reasonable possibility that her injury was caused by cigarette smoking.” It appears that even the trial court recognized that there was evidence upon which the jury could find for PM as to the statute of limitations issue. In ruling on the motion for directed verdict, the trial court stated that “the evidence is scant, but there is some evidence.” Where there are “conflicting reasonable inferences” that “can be drawn from the record,” then the issue becomes a “question of fact for the jury to resolve.” Carter, 778 So.2d at 938. The jury resolved the conflicting reasonable inferences regarding the statute of limitations in favor of PM, and, as such, the trial court should have entered a judgment in accordance with the jury’s finding. Although the decedent was *162 not diagnosed with cancer until 1996, “[t]he critical event is not when an illness was actually diagnosed by a physician, but when the disease or condition first manifested itself.” Engle, 945 So.2d at 1276.
Further, Barbanell never objected to the inclusion of question 3 or objected to the way it was phrased. In fact, when asked by the court, subsequent to the colloquy quoted by the majority, he agreed to the inclusion of question 3. When the court asked whether there was any objection to the jury answering question 3, Barbanell’s counsel replied, “That’s fine with us, Your Honor.” Specifically, the following exchange transpired:
THE COURT: All right. Let me take a look at the verdict. All right. I’m going to work — I find the defendant’s verdict form to be in the better form. The first question should be emphysema, comma, a form of COPD. That’s Subsection B. Same thing with Question 2. What I would like — I do not — I want them to answer Question 3 regardless of their answers to 1 and 2. I think for appellate review purposes, we need an answer on the statute of limitations question. Any objection?
[PM]: May we have a moment, Your Honor?
THE COURT: Don’t — don’t overth-ink it.
[PM]: My inclination is it is okay, Your Honor. If we want to revisit it—
THE COURT: No, no, no, no, no.
[PM]: Then let’s take a moment.
THE COURT: Look, if, on review, there is an issue — an appellate issue created with regard to any of the evidence or any of the legal instructions on addiction or causation, but they ultimately resolve the limitations question, and that is a basis for affirmance either way— because that’s a separate legal issue— you really want an answer to that question.
[PM]: Your Honor—
THE COURT: Both sides should get that either way.
[PM]: We have no objection to rewording, so that Number 3 is answered no matter what.
THE COURT: Do you agree? It’s in everyone’s best interest to have all the issues in Phase 1 answered.
[BARBANELL]: That’s fine with us, Your Honor.
(emphasis added).
By failing to object, Barbanell waived any argument as to the inclusion of question 3. See Frazier v. Philip Morris USA Inc., 89 So.3d 937, 939 (Fla. 3d DCA 2012) (noting that appellant “made and preserved meritorious objections to the court’s adoption of the jury instruction and special interrogatory verdict question submitted by the appellees on the statute of limitations defense”); Halenar v. Ameritech-Ohio SBC/Ameritech, 2011 WL 1631989, at *3 (Ohio Ct.App. Apr. 28, 2011) (finding appellant, by failing to specifically object to a jury interrogatory, waived argument that interrogatory contradicted with directed verdict). It was not until after the jury was deliberating and had a question as to the definition of “injury” that Barbanell argued that question 3 was misleading and should be stricken. The court recognized that Barbanell had never raised this objection, specifically noting in denying the request that “it was not made previously.” This occurred during the follow exchange:
THE COURT: Where’s the question? Where’s the question?
THE BAILIFF: The clerk has it, Judge.
THE COURT: In reference to Question 3, what is the legal definition of *163 “injury,” and was is considered “reasonable possibility”? How would you suggest that I respond to these questions? They’re good questions; although I don’t recall in the hundreds of tort trials that I’ve ever presided over, a jury ever question[ing] what do you mean by “injury.” Perhaps this is another example of where tobacco is different.
[[Image here]]
[BARBANELL]: The question posed by the jury, I don’t think because there is — there were no definitions given, I don’t think we should be giving them any definitions; however, I think in light of the jury’s question, I think based on the Court’s ruling earlier to give Question Number 4, I think Question Number 3 is really, quite frankly, a misleading question and should be struck, and they should just address Question Number 4.
THE COURT: Well, sir, thank you for that, but that request is refused. Interesting, it was not made previously. I think it’s an improper practice to allow a verdict to be provided to a jury; and then when they question the definition of the term within it, once they’ve been deliberating for just under two hours, to say the question should be withdrawn from the jury, that would be improper.
[BARBANELL]: Well, actually, Judge, the defense did raise that issue and, the Court at that point, I think, left.
THE COURT: The defense raised what issue?
[BARBANELL]: The fact that—
THE COURT: They wanted to make sure that I was going to continue to ask Question 3, and I was making it clear that, yes, I was continuing to ask Question 3; and the question has been asked, and it will not be withdrawn. To do so would be improper.
The majority views the lack of a contemporaneous objection to question 3 “in context with what had preceded” Barbanell’s clear acceptance of question 3, and in doing so, disregards the contemporaneous objection rule that we are bound to follow. For an objection to be legally sufficient, it must be made contemporaneously with the alleged error “to place the trial judge on notice that an error may have occurred and provide him or her with the opportunity to correct the error at an early stage of the proceedings.” Franqui v. State, 804 So.2d 1185, 1192 (Fla.2001). “Generally, a party who fails to make a timely objection to a proposed jury instruction waives the right to argue in subsequent proceedings that the instruction should not have been given.” Philip J. Padovano, Florida Civil Practice § 24:4 (2011 ed.); see also Fla. R. Civ. P. 1.470(b). The same is true with respect to a proposed verdict form. Philip J. Padovano, Florida Civil Practice § 25:3 (2011 ed.).
Lopez v. State, 860 S.W.2d 938 (Tex.App.1993), is instructive. In Lopez, the trial court initially denied defense counsel’s requested charge. Later, after both sides had an opportunity to review the proposed charge, the court asked defense counsel whether there were any additional requested instructions. Defense counsel replied, “As finally drafted, we have no objection to the charge.” Id. at 941. The appellate court found that by ratifying the trial judge’s decision, defense counsel affirmatively waived the prior objection. Similarly, in the present case when the trial court asked Barbanell’s counsel if there was any objection to the jury answering question 3, regardless of its prior discussion with the trial court, counsel replied, “That’s fine with us.” Counsel could have objected to question 3 and preserved this issue. By agreeing with the trial court, Barbanell waived or abandoned any earlier argument or theoretical objection he may *164 have had. See also Eagleman v. Korzeniowski, 924 So.2d 855, 860 (Fla. 4th DCA 2006) (finding that appellant abandoned his previous objection by indicating that he had no objection to the trial court’s ruling).
While the majority cites R.J. Reynolds Tobacco Co. v. Webb, 93 So.3d 331 (Fla. 1st DCA 2012), that case is clearly distinguishable on several grounds. First, Webb involved multiple injuries, whereas the instant case involved only a single injury as deemed by the jury, i.e., wrongful death from lung cancer. Further, in this case, the jury specifically found that emphysema did not cause Mrs. Barbanell’s death. Second, Webb discussed the Florida Supreme Court’s decision in Carter only briefly and instead relied on out-of-state cases that involved multiple injuries. Finally, and most importantly, Webb did not involve a jury finding as to the statute of limitations. In this case, the jury did make a specific finding as to the commencement of the statute of limitations.
In summary, I would find that the trial court erred in not entering a judgment in accordance with the jury’s verdict, after the jury made a factual determination as to when the statute of limitations commenced. A trial court cannot assume the role of a “seventh juror” or substitute its judgment for that of the jury on disputed questions of fact. See Hertz Corp. v. Gleason, 874 So.2d 1217, 1220 (Fla. 4th DCA 2004); Gulfstream Park Racing Ass’n ex rel. TIG Specialty Ins. Solutions v. Kessinger, 874 So.2d 645, 647 (Fla. 4th DCA 2004); Aurbach v. Gallina, 721 So.2d 756, 758 (Fla. 4th DCA 1998).
As Judge Richard Posner has observed about the role of the jury:
Rightly or wrongly, our system commits the decision of complex as well as simple facts, facts tinctured with legal or policy significance (such as negligence) as well as the who-did-what-to-whom facts that can be found without any instruction in the law, to the jury in cases in which a right to a jury trial is given.
Soderbeck v. Burnett Cnty., 752 F.2d 285, 289 (7th Cir.1985). By ignoring the determination of facts already made by the jury in this case, the majority opinion needlessly undermines the “system” which “commits the decision of ... facts” to the jury. Id.
Accordingly, I am compelled to follow the findings of the jury when there is conflicting evidence that only a jury can resolve.