LAZOVITZ, INC., Plaintiff–Appellant,

v.

SAXON CONSTRUCTION, INC., Defendant–Third Party Plaintiff–Appellee,

v.

The KLETT ORGANIZATION, ARCHITECTS, P.A., Third Party Defendant.

No. 89–5403.

United States Court of Appeals, Eleventh Circuit.

Sept. 10, 1990.

---

Mark F. Biedeau, Kenneth G. Spillias, West Palm Beach, Fla., Steven A. Arbittier, Wolf, Blook, Schorr, Philadelphia, Pa., for plaintiff-appellant.

Shelley H. Leinicke, Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, P.A., Ft. Lauderdale, Fla., Paul Morris, Coral Gables, Fla., for defendant-third party plaintiff-appellee.

Before CLARK and EDMONDSON, Circuit Judges, and RUBIN *, Senior Circuit Judge.

CLARK, Circuit Judge:

## FACTS

Lazovitz, Inc. (Lazovitz) as general contractor entered into three cost-plus construction contracts covering three different projects: Florida Club Care Center, Florida Club Apartments, and Grammercy Park Nursing Care Center. On paper, each project is owned by a limited partnership registered in Florida that carries the name of the project; however, the people behind all three projects are the same. In this opinion, the term "owner" refers to the common interest behind the three projects. To accomplish certain plastering and drywall work, Lazovitz entered into three subcontracts with Saxon Construction, Inc. (Saxon) for work on each of the three projects. Each subcontract was project specific. Insofar as they are at issue in this appeal, the terms of the three general contracts are the same and the terms of the three subcontracts are the same. On each of the three projects, Saxon allegedly breached its respective subcontract by failing to complete work as prescribed in the architect's plans. Lazovitz discharged Saxon and hired a replacement subcontractor to complete the work. To ensure that the substitute work was accomplished in a timely fashion, the owner "advanced" Lazovitz the money needed to pay the substi-

---

* Honorable Alvin B. Rubin, U.S. Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

tute subcontractor for the repairs. Lazovitz and the owner executed separate supplemental letter agreements for each of the three projects to govern their respective obligations regarding the advance. The three agreements substantively are the same.

Pursuant to its understanding of its obligation under the supplemental agreements, Lazovitz filed a nine count complaint against Saxon for breach of contract and trespass on each of the three construction projects; Lazovitz alleged that Saxon breached the contract by failing to complete performance. Saxon counterclaimed on each of the subcontracts with Lazovitz for the amount due alleging substantial performance of the subcontract. Lazovitz answered that Saxon had breached the contract and claimed a set-off as an affirmative defense to Saxon's counterclaim asserting the same damages alleged in its complaint. During discovery, Saxon obtained a copy of the supplemental agreement governing the Florida Club Care project; however, it did not obtain the supplemental agreements covering the other two projects. Saxon moved for summary judgment with respect to the counts concerning the Florida Club Care project, claiming that the supplemental agreement showed that Lazovitz had suffered no damages. On June 10, 1987, the district court granted Saxon's motion. The case went to trial on November 2, 1987; in the interim, however, Saxon obtained copies of the remaining two supplemental agreements. At the start of the trial, Saxon made an *ore tenus* motion for summary judgment on the counts concerning the remaining two projects.[1] The district court granted the motion and the trial proceeded on Saxon's counterclaim for the balance due under the contract with Lazovitz claiming breach of contract and set-off.

In deciding the motions for summary judgment, the district court considered the underlying cost-plus contract and the supplemental agreement and concluded that Lazovitz had a conditional obligation to repay the owner. Since the owner had paid all the costs, including the additional amount necessary to effect the repairs, and had paid the agreed upon "plus," the district court reasoned that Lazovitz had suffered no damage. The court also reasoned that since Lazovitz's repayment obligation was conditional and since the owner had made no demand for repayment, the possibility that Lazovitz might at sometime in the future be held liable for the advanced funds was too speculative to give rise to any compensable damage. The court concluded that without any damages, Lazovitz did not have a cause of action.

At the trial on Saxon's counterclaim, the court awarded Saxon the contract price minus certain set-offs.[2] The district court disallowed Lazovitz's claims for breach of contract and setoff to obtain substitute performance on the same theory upon which it had relied to grant summary judgment. After trial, Saxon moved to tax costs against Lazovitz; the district court granted the motion concluding that Saxon was the prevailing party.

The gravamen of appellant's claim is that the district court erred by interpreting the written supplemental agreement as a conditional obligation. Lazovitz maintains that the agreement is clear on its face that it is obligated to return the money advanced. In support of its contention, Lazovitz submitted the affidavit of the owner's general partner who asserted that the money advanced to Lazovitz was to be returned. Saxon offered nothing to rebut the affidavit. Appellant also claims that even if the document is not clear on its face, the affidavit creates a genuine issue of material fact which precludes summary judgment.

---

**1.** The complaint included two other counts which alleged that Saxon had failed to submit to Lazovitz time sheets and other such paperwork required by the FHA pursuant to the terms of the FHA loan used to finance the projects. The district court required Saxon to submit the necessary papers before it would proceed to trial. These counts were then dismissed.

**2.** These set-offs consisted primarily of payments made by Lazovitz to subcontractors and materialmen hired by Saxon who Saxon failed to pay. Saxon did not dispute these, and apparently the owner had not reimbursed Lazovitz for these costs.

Appellee asserts that since the district court heard appellant's breach of contract and set-off claim at trial, the issue of whether the court properly granted summary judgment is moot.

## DISCUSSION

A. Summary Judgment Was Not Appropriate.

■ The district court concluded that Lazovitz could not sue Saxon because Lazovitz had suffered no damages. In granting summary judgment, the district court relied on a line of Florida construction cases which hold that the non-breaching party "must show actual expenditures occasioned by the breach." *Tuttle/White Constructors, Inc. v. Montgomery Elevator Co.,* 385 So.2d 98, 100 (Fla.App. 5 Dist.1980); *Young v. Johnston,* 475 So.2d 1309, 1313 (Fla.App. 1 Dist.1985); *R.K. Cooper Builders, Inc. v. Free–Lock Ceilings, Inc.,* 219 So.2d 87, 88–89 (Fla.App. 3 Dist.1969). This notion coupled with the general theory that damages are to place the injured party in as advantageous a position as he would have been had his contract not been broken, *Popwell v. Abel,* 226 So.2d 418, 422 (Fla.App. 4 Dist.1969); Fla.Jur.2d § 10 (1982), apparently led the district court to conclude that Lazovitz had suffered no injury. Thus, the district court would require a plaintiff to show current net out-of-pocket loss, concluding that any other losses would be too speculative to support their recovery as damages. These cases do not support that conclusion. They simply stand for the proposition that to recover damages, the amount of loss occasioned by the breach must be proved with reasonable certainty. Florida courts allow contractors to recover when necessary repairs, occasioned by a breach, have not been started; the contractor must be able to show the *anticipated* cost with reasonable certainty. *Lynch v. Florida Min. & Materials Corp.,* 384 So.2d 325, 327–28 (Fla.App. 2 Dist. 1980); *B & J Holding Corp. v. Weiss,* 353 So.2d 141, 143 (Fla.App. 3 Dist.1978). These "losses" are no less speculative than the ones at issue in the instant case and are recoverable under Florida law.

■ Additionally, the district court misapprehended the function of a cost-plus contract. Cost-plus contracts are often not competitively bid and are frequently used when the owner lacks the special expertise needed to select competent subcontractors and to coordinate the project. *Jones v. J.H. Hiser Constr. Co.,* 60 Md.App. 671, 484 A.2d 302 (1984), *cert. denied,* 303 Md. 114, 492 A.2d 616 (1985); L. Leiby, *Florida Construction Law Manual* § 7.05 (2d. ed. 1988). Generally, in a cost-plus contract, the owner is obligated to pay all legitimate costs incurred by the general contractor. Legitimate cost does not normally include the cost of obtaining substitute performance in the event of a subcontractor breach. *See* Leiby, *supra,* § 7.05 (noting that failure to minimize additional costs due to subcontractor's breach may be breach of prime contract). However, according to the district court, if the owner pays the contractor for the cost of obtaining substitute performance, any right of action the contractor may have had inures to the owner. Since the owner is not a party to the contractor-subcontractor contract, for the owner to have a cause of action against the subcontractor requires the court to apply either an implied assignment, or third-party beneficiary theory. Nothing in the principal cost-plus contracts or the supplemental agreements supports the view that the contractor assigned to the owner the right to sue on these subcontracts. In fact, the supplemental agreement compels the opposite conclusion. There, Lazovitz acknowledges that it is responsible for the cost of repair work caused by Saxon's breach. Neither is the owner a third-party beneficiary of the contract between the general contractor and the subcontractor. The commentators and courts that have considered the question have concluded that unless the contract specifically so provides, the owner is an incidental beneficiary of the contract between the subcontractor and the contractor. *Port Chester Elec. Constr. Co. v. Atlas,* 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976) (cost-plus contract between owner and contractor does not

change analysis). *See* E. Farnsworth, *Contracts* § 10.3 at 724 (1982); 4 A. Corbin, *Contracts* § 779D (1951). *Cf. Sears Roebuck & Co. v. Jardel,* 421 F.2d 1048, 1054 (3rd Cir.1970) (subcontract explicitly contemplated provision of services by subcontractor to owner; therefore owner has rights under contract as third-party beneficiary).

Thus, in the typical cost-plus contract, it is the general contractor who has both the expertise and the obligation to litigate, if necessary, issues of non-complying performance and breach. Nothing distinguishes the cost-plus contracts in this case from the typical case.

■ Our inquiry does not end there as the owner and the contractor executed supplemental agreements. However, contrary to the district court, we conclude that the supplemental agreements do not alter the substance of the principal contracts and do not create a conditional obligation to repay. In the supplemental agreements, Lazovitz acknowledges full responsibility for Saxon's breach, and the excess cost paid by the owner is referred to as an "advance." We recognize that the reimbursement clause of each supplemental agreement creates some ambiguity. The meaning of contract terms is an issue of law and therefore is a matter for the court to decide; nevertheless, the meaning of ambiguous terms may be proved by extrinsic evidence. *Reed v. Florida Dept. of Transportation,* 503 So.2d 920, 921 (Fla.App. 4 Dist.1987). The only evidence presented by either party to resolve the ambiguity was an affidavit by Stephen Lazovitz, the party who signed the agreements on behalf of the owner. The affidavit supports the view that Lazovitz is liable for the advance. Additionally, since Saxon is not a party to the supplemental agreements, it may not challenge parol evidence, if properly admissible, offered to resolve ambiguities. *Tropicana Products, Inc. v. Shirley,* 530 So.2d 493, 494 (Fla. App. 2 Dist.1988), *review dismissed,* 541 So.2d 1173 (1989). Finally, Lazovitz drafted the agreement and under the maxim *contra proferentum,* (ambiguous terms are construed against the drafter), the con-

tract should be construed to impose on Lazovitz the obligation to repay regardless of whether it recovers. *Cf. Southeastern Fire Insurance Co. v. Lehrman,* 443 So.2d 408, 409 (Fla.App. 4 Dist.1984). In light of all surrounding circumstances, we conclude that the parties intended Lazovitz to pursue Saxon for breaching the subcontract. It seems to us counter-intuitive that the owner would pay twice for something after it extracted from the contractor an admission of liability. The district court erred in granting Saxon's motions for summary judgment on all three projects.

B. Saxon's Counterclaim.

■ Saxon maintains that since the terms of the supplemental agreement were fully litigated in the bench trial of Saxon's counterclaim and Lazovitz's set-off defense, Lazovitz's objection to the district court's disposal of its complaint on summary judgment is moot. However, it appears that the district court simply adhered to its legal interpretation of the supplemental agreements when it decided the case at trial. The district court declined to allow Lazovitz to raise its breach of contract defense because Lazovitz could claim no set-off. We conclude that this was error and that the district court also erred by allowing Saxon to recover on the contract. Saxon may recover on the contract only if it substantially performed under the contract. *Beeson v. Sartori,* 553 So.2d 180, 182 (Fla.App. 4 Dist.), *clarified,* 553 So.2d at 183 (substantial performance is that which "is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price" minus set-offs); *Lockhart v. Worsham,* 508 So.2d 411, 412 (Fla.App. 1 Dist. 1987) (doctrine of substantial performance "is applicable where a variance from the specifications of the contract is inadvertent or unintentional and unimportant"). *See* Farnsworth, *supra,* § 8.16 at 611–12. A party seeking to recover for substantial performance may not be in material breach of the contract. *Boyce Constr. Corp. v. District Bd. of Trustees,* 414 So.2d 634, 635–36 (Fla.App. 5 Dist.1982). Lazovitz claimed that Saxon breached the contract

by failing to complete performance in accordance with the contract. The district court made no finding of fact that Saxon did not breach the contract, or that it substantially performed under the contract. Upon remand, the district court shall consider the evidence relating to whether or not Saxon committed a "material breach" of its contract. After doing so, it shall make the necessary findings of fact and the resultant conclusions of law.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED and the case REMANDED for new proceedings consistent with this opinion.