On Motion FOR ReheaRing
PER CURIAM..
We grant the appellant’s motion for rehearing, withdraw our slip opinion, dated June 22, 2012, and substitute the following in its place.
Philip Morris USA, Inc. (PM USA) appeals the final judgment awarding appel-lee, Lucinda Naugle, $36,760,500, after finding PM USA liable for Naugle’s injuries caused by her addiction to PM USA-manufactured cigarettes. PM USA raises five issues on appeal. For the reasons set forth below, we reverse and remand for a new trial only on compensatory and púni-tive damages.
As an Engle[1]-progeny case, the trial was conducted in two phases in the manner we approved of in R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707 (Fla. 4th DCA 2011). The evidence presented in Phase I revealed that Naugle smoked PM USA-manufactured cigarettes from 1968 (age 20) until 1993. When she began smoking cigarettes, she had never heard of nicotine or its addictive nature. She became addicted and was eventually diagnosed with severe chronic obstructive pulmonary disease (COPD) with exacerbation. The Phase I jury found that Naugle was an Engle class member (i.fe., she had been addicted to cigarettes containing nicotine and the addiction was a legal cause of her emphysema).
*946 Phase II involved issues of causation, comparative fault, and damages. The trial court instructed the Phase II jury that based on the Phase I verdict, Naugle was entitled to the following Engle findings: (1) PM USA was negligent; (2) PM USA sold or supplied cigarettes that were defective; (3) PM USA placed cigarettes on the market that were defective and unreasonably dangerous; (4) PM USA concealed or omitted material information not otherwise known or available, concerning the health effects or addictive nature of smoking cigarettes; and (5) PM USA agreed with other tobacco companies to conceal or omit information concerning the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment.
After Phase II, the trial court instructed the jury on legal causation as to each of Naugle’s claims. The jury found PM USA ninety percent at fault and Naugle ten percent at fault and awarded compensatory damages in the following amounts: $90,000 for past medical expenses; $3.7 million for future medical expenses; $12.2 million for past pain and suffering; and $40.6 million for future pain and suffering. The jury further determined, by clear and convincing evidence, that punitive damages were warranted in the amount of $244 million.
The trial court granted PM USA’s post-verdict motion for remittitur and reduced the non-economic compensatory damages to $9,825,000, for a total compensatory damages award of $12,982,500, after applying comparative fault. The trial court also reduced the punitive damages award from $244,000,000 to $25,965,000, a 2:1 punitive-to-compensatory ratio. Naugle accepted the remitted amount of $38,947,500, and the trial court entered an amended final judgment in the amount of $36,760,500. PM USA now appeals the amended final judgment.
The trial court correctly applied Engle and correctly instructed the jury as to legal causation.
PM USA conceded at oral argument that our decision in Brown forecloses the first two issues raised in its brief — whether application of the Engle findings to this progeny case violates appellant’s due process rights and whether the trial - court properly instructed the jury as to legal causation.[2]
The trial court properly denied PM USA’s motion for directed verdict as to the fraudulent concealment and conspiracy claims.
PM USA argues that Naugle did not prove reliance, and in any event, her claims are barred by the statute of repose. “[A] trial court should direct a verdict against the plaintiff only if there is no evidence, or reasonable inferences therefrom, upon which a jury may find for the nonmoving party.” NITV, L.L.C. v. Baker, 61 So.3d 1249, 1252 (Fla. 4th DCA 2011) (citation omitted). We review this issue de novo. Contreras v. U.S. Sec. Ins. Co., 927 So.2d 16, 20 (Fla. 4th DCA 2006).
Fraud can occur by omission, and one who undertakes to disclose material information has a duty to disclose that information fully. ZC Ins. Co. v. Brooks, 847 So.2d 547, 551 (Fla. 4th DCA 2003) (citing Gutter v. Wunker, 631 So.2d 1117, *947 1118-19 (Fla. 4th DCA 1994)). “[A] claim of fraudulent misrepresentation and/or concealment requires proof of detrimental reliance on a material misrepresentation.” Soler v. Secondary Holdings, Inc., 771 So.2d 62, 69 (Fla. 3d DCA 2000) (citing Johnson v. Davis, 480 So.2d 625, 627 (Fla. 1985)). “If a plaintiff claims to be misled, but cannot demonstrate a causal connection between the defendant’s conduct and the plaintiffs misapprehension, the plaintiff cannot recover.” Humana, Inc. v. Castillo, 728 So.2d 261, 265 (Fla. 2d DCA 1999) (citation omitted). However,
[i]t is not necessary that a direct statement be made to the representee in order to give rise to the right to rely upon the statement, for it is immaterial whether it passes through a direct or circuitous channel in reaching him, provided it be made with the intent that it shall reach him and be acted on by the injured party.
Harrell v. Branson, 344 So.2d 604, 606 (Fla. 1st DCA 1977) (citation omitted).
Florida’s statute of repose requires that any action “founded upon fraud” be filed within twelve years “after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.” § 95.031(2)(a), Fla. Stat. (2007). Engle was filed on May 5, 1994; thus, any concealment claim in this case had to be based on conduct that occurred after May 5, 1982. Because fraudulent concealment requires proof of reliance, Naugle’s claim is barred unless the record demonstrates that she justifiably relied on statements or omissions made after that date. Joy v. Brown & Williamson Tobacco Corp., No. 96-2645CIV-T24(B), 1998 WL 35229355, at *5 (M.D.Fla. May 8, 1998).
At trial, Naugle testified that by 1970, she was aware that smoking could be dangerous to her health. However, the En-gle findings prove “that [PM USA] concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both.” Engle, 945 So.2d at 1277; Brown, 70 So.3d at 710. Although Naugle was aware that smoking could have been dangerous to her health, the Engle findings preclusively establish that PM USA knew that smoking cigarettes presented dangerous health consequences and that it concealed material information relating to the true health effects of smoking as well as the addictive nature of smoking.
As the First District held in R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060 (Fla. 1st DCA 2010),[3] this concealed information was designed to create doubt in the smoker as to all of the known health hazards created by smoking cigarettes. Moreover, the record in this case demonstrates that PM USA continued to conceal material information relating to the true health effects of smoking well after 1982.[4] *948 We therefore hold that it was for the jury to determine (1) whether Naugle would have continued to smoke PM USA’s cigarettes if not for PM USA’s nondisclosures; and (2) whether Naugle justifiably relied on the false controversy created by the tobacco industry after May 5, 1982. The jury found for Naugle on these issues, and as the jury’s findings are supported by competent substantial record evidence, we do not disturb these findings on appeal. The trial court abused its discretion in denying PM USA’s motion for new trial based on the compensatory and punitive damages awards.
The trial court found that the non-economic and punitive damages were excessive pursuant to section 768.74(5), Florida Statutes (2007):
I am [] convinced that the jury panel was conscientious, intelligent, and sincerely intent on doing justice. However, I must conclude that the jury was moved by passions — sympathy for [Naugle’s] suffering and anger toward PM USA’s conduct and strategy, resulting in the failure to follow my instructions that the damages awarded shall be based solely on PM USA’s conduct directed to this Plaintiff, and the harm caused to this Plaintiff. [Emphasis added.]
The trial court granted PM USA’s motion for remittitur and denied its motion for new trial. PM USA argues that because the trial court expressly found that both the compensatory and punitive damages awards were infected by passion and prejudice, and that the jury disregarded the court’s instructions, likely including punishment for non-party harms in awarding punitive damages, the awards must be set aside because these errors cannot be cured by remittitur. Instead, PM USA argues a new trial is the proper remedy. Under the unique facts of this case, we agree.
In reviewing a trial court’s grant or denial of a motion for new trial, this court applies an abuse of discretion standard. Philip Morris v. French, 897 So.2d 480, 490 (Fla. 3d DCA 2004). Orders of remit-titur are likewise reviewed for an abuse of discretion. Adams v. Saavedra, 65 So.3d 1185, 1188 (Fla. 4th DCA 2011). In support, PM USA relies on Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla.1977), wherein the Florida Supreme Court stated: “In the absence of improper influences a remittitur may be appropriate, but here the District Court concluded that the verdicts were indicative of improper influences of passion and prejudice working on the jury.” Id. at 627. PM USA argues that this language demonstrates that remittitur cannot cure a jury’s disregard for its instructions.
PM USA further relies on Waste Management, Inc. v. Mora, 940 So.2d 1105 (Fla.2006), and Olivas v. Peterson, 969 So.2d 1138 (Fla. 4th DCA 2007), for the proposition that even where a defendant’s motion for remittitur is granted, the party seeking the remittitur may still be “a party adversely affected” under section 768.74, Florida Statutes, the remittitur statute. While PM USA never presented these cases to the trial court at the hearing on their motion for remittitur/new trial, nor to us until filing a notice of supplemental authority two business days before the scheduled oral argument, it was clear that PM USA was still seeking a new trial after the trial court granted the remittitur. *949 Notwithstanding the very late presentation of this case law, the principle announced in Mora is still good law and binding on this court.
In its motion for rehearing, appellant argues we should reverse because the trial court erred by striking twenty-three of its affirmative defenses, specifically its statute of repose defense. Simply put, appellants made no argument regarding this point in its initial brief, and instead, merely acknowledged the order’s existence in its statement of the facts. Therefore, the argument on rehearing was waived because it was not argued in appellant’s initial brief. See Ayer v. Bush, 775 So.2d 368, 370 (Fla. 4th DCA 2000) (“It is a rather fundamental principle of appellate practice and procedure that matters not argued in the briefs may not be raised for the first time on a motion for rehearing_”).
Accordingly, we affirm the final judgment as to its findings of liability for compensatory and punitive damages, but remand for a new trial on the issue of damages.

Affirmed in part; Reversed and Remanded in part.

POLEN, TAYLOR and HAZOURI, JJ., concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. Here, as in Brown, the trial court did not allow the jury to use the Phase I findings to determine legal causation, and thus liability, in Phase II. Instead, the jury was properly instructed on legal causation as to Naugle’s claims in Phase II and was required to make causation findings on the Phase II verdict form. We find no error. See Brown, 70 So.3d at 715-18.

. The Martin court held that the record contained abundant evidence from which the jury could infer reliance on the false controversy created by the tobacco industry aimed at creating doubt among smokers that cigarettes were hazardous to health. Martin, 53 So.3d at 1069.

. Specifically, testimony, as well as PM USA's own internal business records, revealed that PM USA publicly denounced the Surgeon General’s conclusion in 1988 that smoking was addictive, and PM USA did not admit that smoking was the cause of various diseases, including emphysema and lung cancer, until October 2000, when PM USA altered its website to state that PM USA agrees with the opinions articulated by the Surgeon General. In addition, a video clip from 1994 was admitted into evidence, wherein PM USA executives, including PM USA’s CEO, testified before Congress that smoking was not proven to *948 be harmful and nicotine was not addictive. At trial, Doctor Kenneth Cummings testified that in 1994, "there was no doubt” within the medical community that smoking was the cause of diseases like lung cancer and emphysema, and that such information "had been known for decades." Dr. Cummings testified that "as early as 1958, [PM USA] scientists had indicated that cigarette smoking had been the cause of lung cancer.”