John J. CAFARO, Plaintiff-Appellant,

v.

Elia ZOIS, Mariana Zois, Keith Hyatt,
Defendants-Appellees.

No. 16-15522
Non-Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

(May 23, 2017)

Richard Thomas, J. Michael Thompson, Henderson Covington Messenger Newman & Thomas, Co., LPA, Youngstown, OH, Daniel Wayne Matlow, Daniel W. Matlow, PA, Hollywood, FL, for Plaintiff-Appellant

Robert M. Kline, Marissa Catherine Krumm, McDermott Will & Emery, LLP, Miami, FL, for Defendant-Appellee Elia Zois, Mariana Zois

Robert F. Reynolds, Slatkin & Reynolds, PA, Fort Lauderdale, FL, Marissa Catherine Krumm, McDermott Will & Emery, LLP, Miami, FL, for Defendant-Appellee Keith Hyatt

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

John J. Cafaro sued over his contract to rent and ultimately purchase a multi-million dollar property in Palm Beach, Florida. Cafaro sued Elia Zois, the property owner; Mariana Zois, his wife; and Keith Hyatt, the receiver for the property during foreclosure proceedings in state court. On appeal is the district court's summary judgment on four claims: Cafaro's claims of breach of contract (Count I) and common law fraud (Count III) against Elia Zois, Cafaro's claim of fraudulent transfer under the Florida Uniform Fraudulent Transfer Act (Count VI) against the Zoises, and Hyatt's counterclaim of breach of contract against Cafaro.[1] After extensive review of the parties' briefs, the district court's opinion, and the record, we reverse summary judgment on Cafaro's claim of common law fraud and affirm summary judgment on the remaining claims.

## I. Facts

### A. Contract

On February 14, 2013, Cafaro contracted with Elia Zois to rent and ultimately purchase property in Palm Beach for $10,370,000. The contract required Cafaro to make periodic payments ranging from $330,000 to $600,000 (totaling $1.6 million) until July 1, 2014, and monthly payments of $35,000 (totaling $770,000) until December 1, 2014.[2] On the December 31, 2014 closing date, Cafaro had to pay $8 million. Also, the contract required Zois to lease Cafaro the property until the December 31, 2014 closing date and to deliver title five days before the closing date. If within the five days Cafaro found a defect that rendered the title unmarketable, he had to either accept the title as is or notify Zois. If Cafaro notified, Zois had thirty days in which to "take reasonable diligent efforts to remove [the] defect[ ]." If Zois failed to remove the defect, Cafaro could accept the title as is or terminate the contract and receive refund of his payments.

Under the contract, a defaulting party lost the "Deposit," which included the monthly and periodic payments. The contract stated:

> **BUYER DEFAULT:** If [Cafaro] fails, neglects or refuses to perform [his] obligations under this Contract, including payment of the Deposit, within the time(s) specified, [Zois] may elect to recover and retain the Deposit for the

1. Although the district court dismissed Cafaro's breach-of-contract claim against Hyatt, Cafaro does not appeal this dismissal.

2. It is unclear whether the periodic payments constituted a non-refundable deposit for the lease or down payment for the purchase agreement. The monthly payments were undisputedly part of the lease, and the $8 million due at closing was undisputedly part of the purchase agreement.

account of [Zois] as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims.... **SELLER DEFAULT**: If for any reason other than failure of [Zois] to make [the] title marketable after reasonable diligent effort, [Zois] fails, neglects or refuses to perform [his] obligations under this Contract, [Cafaro] may elect to receive return of [the] Deposit....

## B. Payments

Cafaro missed a monthly payment in July 2013 but otherwise timely made his monthly payments from March 2013 to July 2014. Cafaro ceased paying after July 2014. On October 23, 2014, Zois sent Cafaro a notice of default for failure to make monthly payments from August to October 2014.

All of Cafaro's periodic payments were timely except the last, which was due on July 1, 2014, but which Cafaro paid two days late.

In total, Cafaro paid approximately $2.2 million.

## C. Liens

### 1. SummitBridge

On March 18, 2013, just over a month after the parties entered into the contract, Bank of America accelerated Zois's mortgage loan (totaling approximately $8 million) for transferring a leasehold interest in the property, which secured the loan. Zois defaulted on the mortgage loan, and on April 16, 2013, Bank of America sold the mortgage to SummitBridge Investments IV LLC. On September 1, 2013, Zois agreed to pay SummitBridge $35,000 per month from October 1, 2013, to January 30, 2015, and any remaining amount due on January 30, 2015. Zois did not make his monthly payments to SummitBridge from April to June 2014 despite collecting the same amount, $35,000, every month from Cafaro.

After Zois's default and during a two-week span beginning June 11, 2014, SummitBridge sent three letters to Cafaro informing him that Zois assigned Cafaro's "rents" to SummitBridge and demanding the rents. SummitBridge and Zois disagreed on whether the $334,000 periodic payment constituted rent. On July 1, 2014, Cafaro paid SummitBridge a $35,000 monthly payment but not the $334,000 periodic payment due that day. Cafaro explained in an email to Zois that Cafaro put the $334,000 "into an escrow account until you and [SummitBridge] can come to [an] agreement on where the payment should be sent."

On July 2, 2014, Zois sent Cafaro a notice of default stating that putting the $334,000 into an escrow account failed to constitute a timely periodic payment and demanded that Cafaro send the money to Zois.[3] On July 3, 2014, Cafaro sent the $334,000 periodic payment to Zois, and on July 7, 2014, Zois sent Cafaro a letter rescinding the notice of default. After July, Cafaro ceased making further payments to either Zois or SummitBridge. On July 25, 2014, SummitBridge initiated a foreclosure action against the property in state court and on September 8, 2014, recorded a notice of lis pendens. On December 12, 2014, the state court appointed Hyatt as the receiver for the property.

### 2. IRS

Zois failed to pay federal income taxes from 2009 to 2012. Finally, on February 4,

---

**3.** Also, Zois's notice stated that the $35,000 payment to SummitBridge was not the monthly payment due July 2014 but a substantially late payment due June 2014. Zois does not argue this on appeal.

2014, the Internal Revenue Service (IRS) recorded a federal tax lien against the property for approximately $3.6 million. The IRS sent Cafaro a letter on June 3, 2014, and again on August 13, 2014, notifying him of the lien and instructing him to make the payments due under his contract with Zois to the IRS. Cafaro did not pay any amount due under the contract to the IRS.

### 3. Apple Chase

On October 3, 2014, the Zoises granted a second mortgage, this time to Apple Chase Investors, LLC, to secure an existing loan for $2 million. Although it is unclear how the Zoises granted a second mortgage while SummitBridge's foreclosure action was pending, Zois states that he "had a relationship with Apple Chase and one of its principals for many years."

### 4. Request for Adequate Assurances

After receiving Zois's October 23, 2014 notice of default, Cafaro sent Zois a November 3, 2014 letter requesting adequate assurances, including but not limited to assurances that SummitBridge and the IRS will release any lien on the property upon closing, that SummitBridge's foreclosure action will have been dismissed by closing, and that Zois will prove that no other lien or encumbrance exists on the property. Cafaro argues that no one responded to the request for adequate assurances, and Zois argues that his father told Cafaro that the liens on the property "would not be a problem."

## II. Standard of Review

We review summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the judgment. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). Summary judgment is appropriate if there is no genuine issue of material fact. Fed. R. Civ. P. 56(a).

## III. Discussion [4]

### A. Breach of Contract

#### 1. Zois's Breach

Claiming that Zois breached the contract, Cafaro argues that Zois failed to respond to his request for adequate assurances. Section 672.609, Florida Statutes, states, "When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance." And the party demanding adequate assurance "may if commercially reasonable suspend any performance" "until he or she receives such assurance." Fla. Stat. § 672.609; *see Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*, 411 So.2d 181, 182 (Fla. 1982) ("[T]he nonbreaching party is relieved of its duty to tender performance."). However, "a party already in breach is not entitled to invoke [the section] by demanding assurances." *See Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1361 (11th Cir. 2010) (internal quotation marks omitted) (discussing a similar Georgia law).

■ Cafaro did not request adequate assurances until November 3, 2014, only

---

4. Florida law governs each claim—breach of contract, common law fraud, and fraudulent transfer under the Florida Uniform Fraudulent Transfer Act. This opinion cites cases from both the Florida Supreme Court and the Florida district courts of appeal because "it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State." *Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177, 61 S.Ct. 176, 178, 85 L.Ed. 109 (1940).

after missing four monthly payments totaling $140,000 and only after receiving a notice of default from Zois. As the breaching party, Cafaro could not request adequate assurances and use Zois's failure to respond to the request to excuse his breach. Also, Cafaro argues for the first time on appeal that his e-mail to Zois on June 25, 2014—before Cafaro ceased monthly payments—constitutes a request for adequate assurances.[5] Even if this argument is properly before this court, the e-mail asks only for clarification on whether Cafaro should send a $334,000 periodic payment to Zois or SummitBridge. This email neither requests assurance that Zois can deliver title nor discusses Cafaro's failure to pay his $35,000 monthly payments, which caused his default.

### 2. Cafaro's Breach

As receiver for the property, Hyatt counterclaims that Cafaro, not Zois, breached the contract. Even viewed in the light most favorable to Cafaro, the record reveals that Cafaro failed to pay his rent— the $35,000 monthly payment—in July 2013 and in every month after July 2014. Even if Cafaro had doubts about Zois's ability to deliver title, under the contract Zois was not required to deliver title until five days before the December 31, 2014 closing date. And as stated above, Cafaro did not request adequate assurances until after missing four monthly payments and receiving a notice of default from Zois. The contract specifically includes Cafaro's failure to pay as grounds for his default. And because Cafaro defaulted, Zois under the contract "elect[ed] to recover and retain the Deposit for the account of [Zois] as agreed upon liquidated damages, consider-

ation for execution of this Contract, and in full settlement of any claims . . . ."

In response, Cafaro asserts four arguments. First, Cafaro argues that Zois anticipatorily breached their contract by causing the lis pendens—i.e., by defaulting on his mortgage loan from Bank of America and by failing to pay the assignee of the mortgage, SummitBridge, with the money he received from Cafaro. However, Cafaro erroneously assumes that an inability to deliver marketable title constitutes a breach of the contract. *See Fabel v. Masterson*, 951 So.2d 934, 936 (Fla. Dist. Ct. App. 2007) (holding that a lis pendens does not result in anticipatory breach because the contract offered the seller time to cure and the buyer "specific remedies" if the seller could not deliver marketable title); *Jones v. Warmack*, 967 So.2d 400, 402 (Fla. Dist. Ct. App. 2007) ("Under the language of the contracts as a whole, the parties did not intend the title to be without defect but, rather, to be the best title to which Buyer would agree; or stated a different way, a marketable title that satisfied Buyer.").

Nothing in the contract guaranteed delivery of marketable title. The contract required Zois to deliver marketable title five days before closing; however, if Cafaro discovered a defect in the title during the five days, Zois had thirty days in which to cure the defect. If Zois failed to cure, Cafaro could accept the title as is or terminate the contract and receive refund of the Deposit. In sum, the contract offered Zois a time to cure and Cafaro specific remedies for a defect in the title. Zois's inability to deliver marketable title therefore would not have constituted a breach of the contract. *See Fabel*, 951 So.2d at 936; *Jones v. Warmack*, 967 So.2d at 402.

**5.** Cafaro mistakenly states that he sent the e-mail on June 24, 2014. A review of the record reveals that Cafaro sent the email at 10:32 a.m. on June 25, 2014, in response to an e-mail that Zois sent the day before.

Second, Cafaro argues that the "competing demands for payment" from Zois, SummitBridge, and the IRS "provided a legal excuse to suspend payments." However, the only payments left when Cafaro ceased paying Zois and SummitBridge were the $35,000 monthly payments. Zois and SummitBridge disputed over a $334,000 periodic payment; neither disputed that Cafaro should send the monthly payments—the rents—to SummitBridge. Also, 26 U.S.C. § 6332(e) guarantees that, if Cafaro had paid the IRS, he would have been "discharged from any obligation or liability to the delinquent taxpayer," Zois. Cafaro had no "legal excuse to suspend payments."

Third, Cafaro argues that he did not breach the contract because he substantially performed by paying Zois approximately $2.2 million. "There is almost always no such thing as substantial performance of payment ... when the duty is simply the general one to pay." *Hufcor/Gulfstream, Inc. v. Homestead Concrete & Drainage, Inc.*, 831 So.2d 767, 769 (Fla. Dist. Ct. App. 2002) (internal quotation marks omitted).[6] "Payment is either made in the amount and on the date due, or it is not." *Id.* (internal quotation marks omitted). Further, "substantial performance 'is applicable where a variance from the specifications of the contract is inadvertent or unintentional and unimportant.'" *Lazovitz, Inc. v. Saxon Const., Inc.*, 911 F.2d 588, 592 (11th Cir. 1990) (quoting *Lockhart v. Worsham*, 508 So.2d 411, 412 (Fla. Dist. Ct. App. 1987)); *see also Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 784 (11th Cir. 1999). It does not apply to Cafaro, who intentionally withheld payment.

Finally, Cafaro argues that the district court erred in sua sponte granting summary judgment for Hyatt. Under Rule 56(f), Federal Rules of Civil Procedure, a court may, "after giving notice and a reasonable time to respond ... grant summary judgment for a nonmovant." *See Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) (concluding that a sua sponte grant of summary judgment was proper because "the district court had all the information necessary to rule on the legal issues, and [the appellant] raised no genuine question of material fact that would have precluded summary judgment"); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999) ("[S]o long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, then granting summary judgment sua sponte is entirely appropriate.").

We review de novo the district court's interpretation of the Federal Rules of Civil Procedure. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013). And a de novo review reveals that the district court acted in accordance with Rule 56(f). Although Hyatt did not move for summary judgment on his breach-of-contract counterclaim, he suggested in response to Cafaro's motion for summary judgment that "the Court should consider granting summary judgment in [Hyatt]'s favor pursuant to Fed.R.Civ.P. 56(f)." The response even proposed the amount of damages—$35,000 for each month that Cafaro stayed on the property without paying rent. After the response, the district court held a hearing on Cafaro's motion for summary judgment and allowed

---

6. *Cf. Green Tree Servicing, LLC v. Milam*, 177 So.3d 7, 13 (Fla. Dist. Ct. App. 2015) (finding substantial compliance with a requirement to give "notice prior to foreclosure").

him to dispute Hyatt's breach-of-contract counterclaim. Cafaro received "sufficient advance notice" and an "adequate opportunity" to respond. *See Burton*, 178 F.3d at 1204.

## B. Fraud

Cafaro appeals the district court's summary judgment on Cafaro's claim of common law fraud. In order to establish fraud in Florida, a claimant must show that "(1) the opposing party made a misrepresentation of a material fact, (2) the opposing party knew or should have known the falsity of the statement, (3) the opposing party intended to induce the aggrieved party to rely on the false statement and act on it, and (4) the aggrieved party relied on that statement to his or her detriment." *Jackson v. Shakespeare Found., Inc.*, 108 So.3d 587, 595 n.2 (Fla. 2013) (citing *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010)).

"Generally, the false statement of material fact necessary to establish fraud must concern a past or existing fact." *Prieto v. Smook, Inc.*, 97 So.3d 916, 917 (Fla. Dist. Ct. App. 2012). "However, if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may also constitute" fraud. *Id.* at 917–18 (internal quotation marks omitted). Also, fraud "includes the intentional omission of a material fact," *Ward v. Atl. Sec. Bank*, 777 So.2d 1144, 1146 (Fla. Dist. Ct. App. 2001), if "a duty to make such disclosure exists." *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So.2d 1165, 1166 (Fla. Dist. Ct. App. 2003). Such duty exists if a defendant "undert[akes] to disclose material information" but fails "to disclose that information fully." *See Philip Morris USA, Inc. v. Naugle*, 103 So.3d 944, 946 (Fla. Dist. Ct. App. 2012) (per curiam).

Viewed in the light most favorable to Cafaro, *see Wilson*, 376 F.3d at 1085, a genuine issue of material fact exists as to whether Zois promised, but never intended, to deliver title to Cafaro. If the evidence is viewed in the light most favorable to Cafaro, Zois contracted to lease and sell the property for $10,370,000 (1) fully aware that the IRS would attach a federal tax lien on the property for approximately $3.6 million, (2) intending never to repay his $8 million mortgage loan from SummitBridge, and (3) intending to secure $2 million by granting a second mortgage to Apple Chase. Despite receiving monthly and periodic payments from Cafaro, Zois used the money to pay neither the IRS, nor SummitBridge, nor Apple Chase. And he failed to pay despite claiming to possess assets exceeding $38 million. "[C]ases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1243 (11th Cir. 2013) (per curiam) (internal quotation marks omitted).

Also, a genuine issue of material fact exists as to whether Zois "undert[ook] to disclose material information" but failed "to disclose that information fully." *See Naugle*, 103 So.3d at 946. If the evidence is viewed in the light most favorable to Cafaro, Zois shared information about his mortgage loan from SummitBridge to induce Cafaro into believing that Zois fully disclosed all possible liens on the property. Thus, Zois undertook to disclose information about liens on the property by disclosing information about SummitBridge's lien but failed to disclose that information fully by withholding information about the $3.6 million in unpaid taxes (and the imminent federal tax lien) and about his intention to secure $2 million in debt by granting a second mortgage. *See Friedman*, 837 So.2d at 1166 ("Where a party in an arm's-length

transaction undertakes to disclose information, all material facts must be disclosed."); *Ribak v. Centex Real Estate Corp.*, 702 So.2d 1316, 1317 (Fla. Dist. Ct. App. 1997) ("[T]he issue of materiality [i]s one for a jury."); *Vokes v. Arthur Murray, Inc.*, 212 So.2d 906, 909 (Fla. Dist. Ct. App. 1968) ("Even in contractual situations where a party to a transaction owes no duty to disclose facts within his knowledge or to answer inquiries respecting such facts, the law is if he undertakes to do so he must disclose the Whole truth.").

## C. Florida Uniform Fraudulent Transfer Act

■ Cafaro appeals the district court's summary judgment on Cafaro's claim of fraudulent transfer under the Florida Uniform Fraudulent Transfer Act (FUFTA). Cafaro claims that the Zoises fraudulently transferred the property by granting a second mortgage to Apple Chase. In order to establish fraudulent transfer under FUFTA, a claimant must show that (1) a debtor defrauded a creditor, (2) the debtor intended fraud, and (3) the creditor conveyed an "asset" "which is applicable by law to the payment of the debt due." *Wiand v. Lee*, 753 F.3d 1194, 1199–1200 (11th Cir. 2014) (internal quotation marks omitted). In Section 726.102, Florida Statutes, FUFTA defines asset as "property of a debtor" but excludes from the definition "[p]roperty to the extent it is encumbered by a valid lien." The IRS had a valid lien on the property at the time the Zoises granted the second mortgage. The property therefore cannot serve as an asset under FUFTA. The district court correctly granted summary judgment on the FUFTA claim.

## IV. Conclusion

The district court correctly granted summary judgment on Cafaro's claims of breach of contract (Count I) and fraudulent transfer under FUFTA (Count VI) and on Hyatt's counterclaim of breach of contract. However, the district court erred in granting summary judgment on Cafaro's claim of common law fraud (Count III). We affirm in part, reverse in part, and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART.**