DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP MORRIS USA, INC.,**
Appellant,

v.

**JAMES NAUGLE** as Personal Representative of the
Estate of **LUCINDA NAUGLE,**
Appellee.

Nos. 4D20-953 and 4D20-1287

[March 2, 2022]

Consolidated appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack B. Tuter, Judge; L.T. Case No. CACE-07-036736 (07).

Geoffrey J. Michael of Arnold & Porter Kaye Scholer LLP, Washington, DC, and Andrew S. Brenner and Ryan B. Witte of Boies, Schiller & Flexner, LLP, Miami, for appellant.

Kara Rockenbach Link and Daniel M. Schwarz of Link & Rockenbach, PA, West Palm Beach, and John Uustal of Kelley Uustal, PLLC, Fort Lauderdale, for appellee.

KUNTZ, J.

Philip Morris USA, Inc. appeals the circuit court's Final Judgment on Attorneys' Fees and Costs. We agree the court erred when it relied on the testimony of James Naugle's expert witness. So we reverse the final judgment and remand for further proceedings consistent with this opinion.

*Background*

In 2012, we affirmed a final judgment for James Naugle, as personal representative of Lucinda Naugle, as to liability for compensatory and punitive damages but reversed the $300 million damages award. *Philip Morris USA, Inc. v. Naugle,* 103 So. 3d 944, 949 (Fla. 4th DCA 2012),

*disapproved of by Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681 (Fla. 2015).[1]

After we remanded the case for a new trial on damages, the jury returned a second verdict for Naugle for over $11 million. Then Naugle moved for attorney's fees and costs based on a proposal for settlement under section 768.79, Florida Statutes (2008).

The parties stipulated that they would not call their lawyers to testify at the fee hearing and would limit their witnesses to their respective fee experts.

i. *Naugle's Fee Expert*

Naugle's fee expert was a retired circuit court judge. At a deposition, the expert testified that the $1,000-$1,500 rates Naugle requested were reasonable. He explained that under *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), the "extraordinary" time and labor devoted to the case impacted his determination of the "hourly rates" Naugle's attorneys charged. When asked how the time and labor impacted his determination, he testified:

> I didn't analyze it in that fashion. I didn't say, okay, a lot of novelty, a lot of difficulty, let's jump [the rate] to $50 an hour. I didn't do that . . . I reviewed everything, everything, and made a determination as to whether or not those rates were reasonable, and I found them to be reasonable even though my initial impression when I saw the numbers, I thought [the rates were] high.

He also explained that the novelty and difficulty of the case justified "the rates" Naugle's attorneys requested. He stated that the "contingent nature of the fee justifies the award of a higher fee."

Other factors contributed to the expert's fee determination. The expert stated that the "[w]inners should make at least what the losers [make] . . . they should get at least the hourly rate that the highest paid lawyer on the defense team gets." He considered the number of lawyers

---

[1] This is the fifth case in this Court arising from the underlying circuit court case. *Philip Morris USA, Inc. v. Naugle*, 225 So. 3d 828 (Fla. 4th DCA 2017); *Philip Morris USA, Inc. v. Naugle*, 182 So. 3d 885 (Fla. 4th DCA 2016); *Naugle v. Philip Morris USA, Inc.*, 133 So. 3d 1235 (Fla. 4th DCA 2014); *Philip Morris USA, Inc. v. Naugle*, 103 So. 3d 944 (Fla. 4th DCA 2012).

representing both parties. He also considered the punitive nature of fees for rejected proposals for settlement under section 768.79.

Philip Morris moved to preclude the expert's testimony on the basis that the expert's deposition testimony revealed that he relied on factors *Rowe* precluded and other factors Florida law did not recognize. Without relying on proper factors, Philip Morris argued that the expert's testimony was neither supported nor based on a reliable methodology, and therefore he was not qualified to testify at the fee hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The court decided that Philip Morris had to challenge the expert's testimony "as you go along."

At the later hearing on Naugle's fee motion, the expert testified that Naugle's requested rates were "reasonable and fair." On direct examination, the expert attempted to clarify his deposition testimony:

> Q: [W]e know that the *Rowe* case suggests that some of the factors from both . . . the rule regulating the Florida Bar and the Rules of Civil Procedure don't apply to the fee, to establishing the hourly rate.
>
> A: The rate, that's correct.
>
> Q: Okay. All right. [Philip Morris] keeps suggesting to the Court that you considered those [factors] anyway in setting the rate. Is that true?
>
> A: I did not. You know, you can consider those particular [factors] that [Philip Morris] raised and should consider it for the total fee. Not for the rate . . . I didn't read my deposition . . . so I may have said "rate," but I apologize if I did. The *Rowe* factors can be considered, all of them can be considered for the total fee . . . Not the rate.
>
> Q: And that includes the reasonableness of the number of hours to which Philip Morris is objecting, right?
>
> A: Correct . . . And the novelty and the difficulty, things of that nature.

On cross-examination, the expert confirmed that the time and labor required; the novelty, complexity, and difficulty of the questions involved; the results obtained; and whether the fee was fixed or contingent were

factors under *Rowe* that could *not* be considered in determining the reasonable rate. He testified that he considered those factors "as [they] related to the total fee." He also acknowledged that he was incorrect in opining that a contingency fee justifies a higher rate but stated that the factors *Rowe* precluded as to the rate "should not be taken out of any analysis as to the total fee."

The expert reiterated his position that "winners should make at least what the losers make," stating, "that's my theory. I think that should be the case. There's no case law on it." He again testified that he considered the number of lawyers representing the parties as a factor affecting whether "the fee," not the rate, "goes up or down[.]" Finally, he confirmed his opinion that the fee award should be punitive based on the rejected proposal for settlement.

## ii. *The Circuit Court's Rulings*

At the end of the fee hearing, the circuit court first determined the date it would use to decide the amount of reasonable fees. The court selected April 27, 2017—the date this Court affirmed the judgment adopting the jury's second damages award—as the date to determine the reasonable rate of fees. The court "consider[ed] the low rate it would have been in 2009, and the high rate it would have been if I used today's rates of 2019. So I'm making somewhat of a compromise in between. . . ."

As to the reasonableness of the fees, the circuit court explained:

> I think the truth probably lies somewhere between where [Naugle's expert fee witness] is on the really high end of this and where [Philip Morris's expert fee witness] is.
>
> Again, it's not like I can decide these things just on expert witnesses in these cases . . . I saw most every one of these lawyers who are on these spreadsheets work. I saw them all in the courtroom, both tobacco and the plaintiff's lawyers.
>
> So I do approach this from a unique perspective because I don't think I ever saw anybody in an *Engle* tobacco case, at least appear in front of me, that wasn't extraordinarily crafty at what they were doing.
>
> These were extraordinarily difficult issues that, as I said before, never before had I had to tackle. So the expertise by

4

everybody involved, I thought everybody that appeared in front of me was extraordinary.

The court then issued rulings on the rates of Naugle's attorneys. Multiplying the reasonable hours expended by the reasonable hourly rates, the court awarded Naugle $5,328,725 in attorney's fees excluding prejudgment interest. The court later assessed $1,792,401.18 in prejudgment interest against Philip Morris.

*Analysis*

Philip Morris appeals the circuit court's fee judgment. We address one issue: whether the court erred when it denied Philip Morris's motion to exclude the testimony of Naugle's fee expert. We conclude error occurred and reverse.

First, Philip Morris argues that *Daubert* applies to expert testimony on attorney's fees. Naugle disagrees. But even if *Daubert* applies, he argues the circuit court need not have assessed the reliability of his expert's testimony given the trial court's relaxed "gatekeeping" function in bench trials.

We agree with Philip Morris that *Daubert* applies to expert testimony on attorney's fees, as the plain language of section 90.702, Florida Statutes (2019), does not offer any basis to decide otherwise. Furthermore, the United States Supreme Court addressed this exact issue in *Kumho Tire Co., Ltd. v. Carmichael*, holding that *Daubert*'s gatekeeping function applies to all expert testimony. 526 U.S. 137, 147-49 (1999); *see also Kemp v. State*, 280 So. 3d 81, 88 (Fla. 4th DCA 2019) (a court's "basic gatekeeping obligation applies not only to scientific testimony, but 'to all expert testimony'") (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 147).

We also partially agree with Naugle that the procedure followed by the gatekeeper can vary during a bench trial. *See, e.g., United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."). But even when that relaxed approach is taken, at some point the court must determine whether the evidence is admissible. *See, e.g., Kan. City. S. Ry. Co. v. Sny Island Levee Drainage Dist.*, 831 F.3d 892, 900 (7th Cir. 2016) (citing *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010)) ("Where a trial judge conducts a bench trial, the judge need not conduct a *Daubert* (or Rule 702) analysis before presentation of the evidence, even though [they] must

determine admissibility at some point."); *Cristin v. Everglades Corr. Inst.*, 310 So. 3d 951, 957 (Fla. 1st DCA 2020) ("[T]his does not mean that the trial court—even during a bench trial—has the discretion to decide not to perform the gatekeeper function at all.").

Ultimately, the circuit court needed to assess the relevance and reliability of Naugle's expert's testimony. At the hearing, Philip Morris noted that its *Daubert* objections challenged the reliability of the expert's methodology, not his qualifications. But the court found that Naugle's expert could testify because he had a "lifetime of experience" and "no one else" could testify about reasonable hourly rates "in a particularly complex case or a trial except for a lawyer or a judge." At no point after Philip Morris presented its *Daubert* objections did the court assess the reliability of Naugle's proposed expert testimony. Nor did the court consider whether the expert's testimony related to matters requiring his specialized knowledge.

The substance of the expert's testimony is revealing. Naugle's expert stated at his deposition that he did not analyze how the *Rowe* factor for time and labor expended impacted his opinion of the reasonableness of Naugle's requested rates. Instead, the expert explained that he "reviewed everything" and found the rates to be reasonable. He also failed to explain how the *Rowe* factors for the novelty and difficulty of the case and the contingency fee impacted his decision, stating only that those factors "justified" the rates requested.

At trial, the expert attempted to clarify his deposition testimony but failed to sufficiently do so. The expert testified that he considered the *Rowe* factors as to the total fee, not the rate, but again did not explain how those factors impacted his opinion. Nor did the expert explain how his position that "winners should make at least what the losers make" factored into his decision, stating only "that's my theory. I think that should be the case. There's no case law on it."

The circuit court correctly observed that the expert provided "pure opinion testimony based on a lifetime of experience." But the law requires more than experience alone; it requires the court to assess whether the expert's "reasoning or methodology properly can be applied to the facts in issue." *Kemp*, 280 So. 3d at 88-89 (citations and quotation marks omitted). Here, the expert "provide[d] no insight into what principles or methods were used to reach his opinion." *Giaimo v. Fla. Autosport, Inc.*, 154 So. 3d 385, 388 (Fla. 1st DCA 2014). With no insight into the principles, and with clear errors in methodology, the

court had little to assess. As a result, the court erred in refusing Philip Morris's request to exclude the testimony.

Finally, we recognize that a "judge as finder of fact is presumed to have disregarded any inadmissible evidence or improper argument." *Guzman v. State*, 868 So. 2d 498, 510–11 (Fla. 2003) (citing *First Atl. Nat'l Bank of Daytona Beach v. Cobbett*, 82 So.2d 870, 871 (Fla. 1955)). Here, however, the record does not allow us to conclude the court ignored the inadmissible testimony. On the contrary, the record shows that the court relied on it.[2]

### Conclusion

The circuit court's attorney's fees and cost judgment is reversed, and the case is remanded for further proceedings.

*Reversed and remanded.*

LEVINE and KLINGENSMITH, JJ., concur.

\* \* \*

### Not final until disposition of timely filed motion for rehearing.

---

[2] Our reversal renders the remaining issues moot. But, on remand, we caution the parties to avoid double compensation when determining the date used to set the rate of attorney's fees and any award of prejudgment interest. *See, e.g., Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1046 (11th Cir. 2010) ("The district court effectively double-compensated the plaintiffs for delay in payment, and that is never appropriate."). We defer to the circuit court to resolve those issues, once again, on remand.